IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| THEODORE R. DEETER, JR., )<br>    Petitioner, )<br>)<br>  v. )<br>NANCY GIROUX, )<br>et al., )<br>    Respondents. ) | Civil Action No. 13-369 Erie<br>Magistrate Judge Susan Paradise Baxter |

## **OPINION**[1]

Presently before the Court is a petition for a writ of habeas corpus filed by state prisoner Theodore R. Deeter, Jr. ("Petitioner" or "Deeter") pursuant to 28 U.S.C. § 2254. For the reasons set forth below, the petition is denied. A certificate of appealability also is denied.

**I.**

**A.**  **Background**

On January 30, 2011, criminal complaints were filed in the Court of Common Pleas of Forest County against Petitioner at Docket Nos. 10, 12, 13 and 14 of 2011. At Docket Nos. 10, 13 and 14 of 2011, Petitioner was charged with offenses relating to the possession and sale of heroin during three separate encounters with police. At Count 1 of each docket, he was charged with the manufacture, delivery, or possession with the intent to manufacture or deliver a controlled substance, 35 P.S. § 780-133(a)(30) ("PWID"). At Count 2, Petitioner was charged with intentional possession of a controlled substance by a person not registered, 35 P.S. § 780-113(a)(16). At Count 3, he was charged with criminal use of a communication facility, 18 Pa.C.S.A. § 7512(a). At Docket No. 12 of 2011, Petitioner was charged with offenses relating to the possession of marijuana plants and a firearm, which were

---

[1] In accordance with the provisions of 28 U.S.C. § 636(c)(1), the parties have voluntarily consented to have a U.S. Magistrate Judge conduct proceedings in this case, including entry of a final judgment.

1

discovered after the execution of a search warrant at his home. Specifically, he was charged with: (1) Count 1 – PWID; (2) Count 2 – intentional possession of a controlled substance by a person not registered, 35 P.S. § 780-113(a)(16); (3) Count 3 – use or possession of drug paraphernalia, 35 P.S. § 780-113(a)(32); (4) Count 4 – possession of a firearm prohibited, 18 Pa.C.S.A. § 6105(a)(1). (See Commonwealth v. Deeter, CR 10, 12, 13 and 14 of 2011, slip op. at 1 (C.P. Forest Feb. 15, 2012) ("Deeter 1")).[2]

On June 8, 2011, Petitioner, who was represented by Forest County Public Defender Todd A. Woodin, Esq., pleaded guilty to four counts of PWID pursuant to a negotiated plea deal with District Attorney Elizabeth Ziegler, Esq. (He pleaded guilty to Count 1 at each docket). In exchange for his guilty pleas, the District Attorney filed a motion to *nolle prosequi* the remaining offenses at each docket number and for an offense at Docket No. 34 of 2011. On July 1, 2011, the court sentenced Petitioner to an aggregate term of 90-282 months of incarceration. Id. at 2.

In October 2011, Petitioner filed a *pro se* motion for relief under Pennsylvania's Post Conviction Relief Act ("PCRA"), 42 Pa.C.S.A. § 9541 *et seq.* The court appointed Barbara C. Litten, Esq., to represent him and she filed an amended PCRA motion in which it was claimed that Woodin provided Petitioner with ineffective assistance in violation of his rights guaranteed under the Sixth Amendment and that, as a result, his guilty plea was not "knowing." (Amended PCRA motion, ¶¶ 27-35). Ineffective assistance of counsel claims are governed by the standard set forth in Strickland v. Washington, 466 U.S. 668 (1984). Strickland recognized that the Sixth Amendment's guarantee that "[i]n all criminal prosecutions, the accused shall enjoy the right … to have the Assistance of Counsel for his defence" entails that defendants are entitled to be represented by an attorney who meets at least a minimal

---

[2] In addition to electronically filing certain state court records, Respondents also submitted to this Court the original state court records of Petitioner's underlying criminal case in accordance with this Court's local rules.

standard of competence. Under <u>Strickland</u>, a petitioner must show that his trial counsel's representation fell below an objective standard of reasonableness. 466 U.S. at 688. The law presumes that counsel was effective. <u>Id.</u> at 689. <u>Strickland</u> also requires that a petitioner demonstrate that he was prejudiced by his counsel's alleged deficient performance. This requires a showing "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." <u>Id.</u> at 694.[3]

The PCRA court held a hearing on Petitioner's motion on February 10, 2012, at which Petitioner and Woodin testified. On or around February 14, 2012, the PCRA court issued a Memorandum Opinion and Order in which it denied Petitioner's motion for post-conviction relief. In its Memorandum Opinion, it explained:

> In Petitioner's first claim for relief, Petitioner argues that, at the time he entered his plea, Attorney Woodin miscalculated his prior record score as a three (3) or a four (4), which constitutes ineffective assistance of counsel, and therefore, Petitioner's guilty plea was unknowing or involuntary. Petitioner also argues in this second claim that Attorney Woodin provided ineffective assistance of counsel when he advised Petitioner regarding the two guilty plea offers made by the District Attorney. Specifically, Petitioner claims that the guilty plea offer that Attorney Woodin recommended Petitioner accept contained a more significant standard range sentence under the Sentencing Guidelines than the other offered plea deal. The relief that Petitioner is seeking for both claims is to withdraw his guilty plea…
> - - -
> During the Amended [PCRA] hearing, Attorney Woodin testified that he based his calculation of Petitioner's prior record score upon information provided to him by Petitioner. Attorney Woodin testified that he specifically relied upon Petitioner's information that he had one prior misdemeanor conviction and two prior felony convictions[ ] to calculate Petitioner's prior record score. Petitioner testified that Attorney Woodin only asked him about his prior felony convictions, and Petitioner was not aware that his other convictions were relevant to the determination of his prior record score. However, Attorney Woodin testified that Petitioner disclosed to him a prior *misdemeanor* conviction along with two prior felony convictions. Since Petitioner disclosed one

---

[3] Pennsylvania law for judging ineffectiveness corresponds with the <u>Strickland</u> standard. <u>Commonwealth v. Pierce</u>, 527 A.2d 973, 976-77 (Pa. 1987); <u>Commonwealth v. Kimball</u>, 724 A.2d 326 (Pa. 1999). Although Pennsylvania courts typically articulate a three-prong test for gauging ineffective assistance claims and <u>Strickland</u> sets forth its test in two prongs, the legal evaluation is the same, and the differences merely reflect a stylistic choice on the part of state courts.

3

misdemeanor conviction to Attorney Woodin, Petitioner's assertion that he was not aware that all of his prior convictions were relevant to Attorney Woodin's inquiry is not credible. The Court finds that Attorney Woodin did question Petitioner regarding his prior criminal record in order to competently and effectively calculate Petitioner's prior record score.

The Court finds that it was reasonable for Attorney Woodin to base the calculation of Petitioner's prior record score on the information provided to him by Petitioner himself. Petitioner has failed to prove by a preponderance of the evidence that Attorney Woodin did not have a reasonable basis for his miscalculation of Petitioner's prior record score. Therefore, Petitioner has failed to prove that Attorney Woodin provided Petitioner with ineffective assistance during the plea process. As Attorney Woodin's conduct was not ineffective, Petitioner's guilty plea cannot be said to be unknowing or involuntary. Accordingly, Petitioner is not entitled to any relief.

Petitioner's second claim of ineffective assistance of counsel is regarding Attorney Woodin's recommendation of which plea offer to accept. Attorney Woodin testified that he recommended that Petitioner accept the guilty plea offer that required Petitioner to plead guilty to four counts under 35 P.S. § 780-113(a)(30), the [PWID counts]. Attorney Woodin stated that he recommended this course of action because he believed that he would be able to successfully argue to the Court that Petitioner's sentences be run concurrent rather than consecutive, which would significantly shorten Petitioner's sentence. During the Amended [PCRA] hearing, Petitioner submitted an exhibit entitled "Comparison of Plea Offers and Sentences as a Function of Prior Record Score." Defendant's Exhibit "A" (hereinafter Exhibit "A"). Exhibit "A" contains the two plea offers made by the District Attorney, along with a calculation of the offense gravity scores attributed to each offense. Exhibit "A" includes the sentence for the offer that Petitioner ultimately accepted and the "Probable Sentence" for the offer that the Petitioner did not accept. The "Probable Sentence" stated in Exhibit "A" is eighty-one (81) months to nineteen (19) years and two (2) months. Assuming that the calculations are correct, the "Probable Sentence" is a less lengthy sentence than the sentence imposed upon Petitioner under the accepted plea agreement. It is important to state that the "Probable Sentence" is only *probable*. The offer that was not accepted contains an offense under Docket 34 of 2011. At Docket 34 of 2011, Petitioner was charged with one count of Receiving Stolen Property under 18 Pa.C.S.A. § 3925(a). While in hindsight it appears that the second offer may have resulted in a less lengthy sentence, the Court cannot view the decisions of trial counsel with the benefit of hindsight. According to Attorney Woodin's testimony, there was some indication from Petitioner that he was not willing to accept the plea offer because Petitioner stated that he had not committed the crime of receiving stolen property. Along with the Petitioner's reluctance to admit to an offense that he did not commit, Attorney Woodin also believed that he would be able to argue to the Court that Petitioner's sentences should be run concurrent, which could have resulted in an aggregate sentence shorter than even the "Probable Sentence" contained in Exhibit "A".

This Court finds that it was reasonable for Attorney Woodin to advise Petitioner to enter into the negotiated plea deal based upon his belief that he would be able to argue that Petitioner's sentences should be run concurrent to another, rather than consecutive

4

and upon Petitioner's own reluctance to enter in to the other negotiated plea offer. Therefore, Petitioner has not met his burden of proof to prove ineffective assistance of counsel, and Petitioner is not entitled to any relief.

(Deeter 1, CR 10, 12, 13 and 14 of 2011, slip op. at 3-5 (emphasis in original)).

Petitioner, through counsel, filed an appeal with the Superior Court of Pennsylvania. On April 25, 2012, the PCRA court issued a Memorandum Opinion pursuant to Pennsylvania Rule of Appellate Procedure 1925(a) in which it reviewed Petitioner's claims again and reiterated that he was not entitled to any post-conviction relief. (Commonwealth v. Deeter, CR 10, 12, 13 and 14 of 2011, slip op. at 2-3 (C.P. Forest, Apr. 25, 2012) ("Deeter 2") (footnotes omitted)).

On August 31, 2012, The Superior Court issued a Memorandum in which it affirmed the PCRA court's decision to deny relief. (ECF No. 10-5, Commonwealth v. Deeter, No. 403 WDA 2012, slip op. (Aug. 31, 2010) ("Deeter 3")). It held:

> Deeter presents two issues for our review:
>
>> Did the [PCRA] court err when it decided that [trial counsel] Todd A. Woodin was not ineffective because he advised [Deeter] to accept one of the two plea offers made by the Commonwealth and the offer not considered would have resulted in a lesser sentence of incarceration?
>>
>> Did the [PCRA] Court err when it decided that [trial counsel] Todd A. Woodin, Esquire was not ineffective because he was entitled to rely upon [Deeter's] information, without further legal investigation, to calculate [Deeter's] prior record score and use this calculation as the basis of his legal advice to [Deeter] during the plea negotiation?
>
> Appellant's Brief at 4.
> - - -
> Crucial to understanding Deeter's claims is the fact that the Commonwealth presented Deeter with a choice between two plea agreements. One option provided that Deeter would plead guilty to two counts of PWID and one count of receiving stolen property in exchange for the dismissal of all other charges. N.T., 2/10/12, at 35. The other option, and the one that Deeter ultimately chose, provided that Deeter would plead guilty to four counts of PWID in exchange for the dropping of all other charges. Id.
> In his first claim, Deeter argues that trial counsel was ineffective because he "did not pursue discussion with Deeter about the merits of pleading to the receiving stolen

5

property charge. Instead, he remained steadfastly committed to pursuing his strategy of arguing for the concurrent sentencing on multiple charges brought under 35 P.S. § 780-101 *et seq.*" Appellant's Brief at 11.

The PCRA court rejected his claim because it found that counsel did discuss the other plea option with Deeter and because Deeter failed to establish that trial counsel lacked a reasonable strategic basis for suggesting that Deeter take the plea option that involved four counts of PWID based upon trial counsel's belief that he could more successfully argue for concurrent sentences on charges that were all the same. PCRA Court Opinion 4/25/12, at 3-5. This determination is supported by the record. At the PCRA hearing, both Deeter and trial counsel testified that trial counsel presented both offers from the Commonwealth to Deeter. N.T., 2/10/12, at 8, 28. Trial counsel testified that he and Deeter discussed the possibility of going to trial versus accepting a plea agreement *vis-à-vis* the evidence in the case. Id. at 34. Trial counsel also stated that he advised Deeter of his opinion that the Commonwealth would be able to successfully prove the receiving stolen property charge and gun charge. Id. According to trial counsel, the most pressing issue for Deeter was to avoid the gun charge because it carried a significant penalty, and both plea offers eliminated that charge. Id. at 28-29; 34-35. Trial counsel testified that he calculated Deeter's maximum exposure for incarceration based upon the terms of both plea deals offered, and that he shared these calculations with Deeter. Id. at 27-30. Trial counsel further testified that he "advised Deeter, based upon my experience and history with the court that typically, if we are going to see charges come before the court, similar charges are more likely to be ran [sic] concurrently. Now, that was by no way a promise, but it was an indication that, that's typically what I would expect to happen. And I, [with this plea option], having a stronger argument for that …." Id. at 30-31. Trial counsel testified that he believed he had "a fairly strong argument for at least some or all" of the four PWID sentences to be run concurrently. Id. at 35. Additionally, with regard to the plea option that Deeter did not take, trial counsel testified that Deeter did not want to plead to the receiving stolen property charge. Id. at 40.

This testimony supports the PCRA court's determination that trial counsel discussed both plea offers with Deeter and that his advice to Deeter to accept the plea agreement comprised of the four PWID charges was based on a strategic decision reasonably calculated to benefit Deeter. Therefore, the record supports the PCRA court's determination. Because the record supports the PCRA court's determination, we may not disturb it. Walls, 993 A.2d at 295.

In his second issue, Deeter argues that trial counsel was ineffective for relying on Deeter's recitation of his past criminal convictions to determine his prior record score for purposes of evaluating the range of sentences that the trial court could impose under the proposed plea aggrements.[2] Deeter contends that effective counsel would have undertaken further investigation for this purpose.

> [2] Based upon what Deeter told trial counsel, trial counsel determined that Deeter would face a prior record score of three or four. N.T., 2/10/12, at 27-30, 41. However, at sentencing it because clear that Deeter had additional convictions that he did not reveal to trial counsel, resulting in a prior record score of five. N.T., 7/1/12, at 20.

6

The PCRA court found that it was reasonable for trial counsel to rely on Deeter's statement for the purpose of calculating a prior record score. In so concluding, the PCRA court noted trial counsel's testimony that when trying to estimate a client's potential range of sentences when discussing plea agreement[s], it is his normal course of conduct to rely on what the client tells him, and found that "[Deeter] provided the [c]ourt with no evidence as to how this course of conduct … would be unreasonable under the circumstances." PCRA Court Opinion, 4/25/12, at 3. We must agree. The record reflects testimony from trial counsel as depicted by the PCRA court above. See N.T., 2/10/12, at 26-27. We have reviewed the record, and the PCRA court is correct in that Deeter provided no evidence to support a finding that it was unreasonable for trial counsel to rely on Deeter's own statements when trying to determine Deeter's prior record score in order to estimate the range of sentences that Deeter would face under either plea agreement offered by the Commonwealth.[3] Accordingly, we affirm the PCRA court's decision.

> [3] Of note, in reaching its conclusion, the PCRA court credited trial counsel's testimony that he asked Deeter to recount all of his previous convictions over Deeter's testimony that trial counsel inquired only about felonies. PCRA Court Opinion, 2/15/12, at 4. We, as an appellate court, are bound by this credibility determination. See Commonwealth v. O'Bryon, 820 A.2d 1287, 1290 (Pa.Super. 2003) (appellate courts must defer to the credibility determination of the lower court as fact finder).

(Commonwealth v. Deeter, No. 403 WDA 2012, slip op. at 2-8 (Pa.Super.Ct. Aug. 31, 2012) ("Deeter 3") (bracketed text in original, additional footnotes omitted)).

Petitioner next filed a petition for a writ of habeas corpus with this Court pursuant to 28 U.S.C. § 2254 (ECF No. 2) and an accompanying memorandum of law (ECF No. 3). Under 28 U.S.C. § 2254, "[t]he Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Errors of state law are not cognizable. Id. See, e.g., Estelle v. McGuire, 502 U.S. 62, 67-68 (1991). Petitioner carries the burden of proving he is entitled to the writ. Cullen v. Pinholster, — U.S. — , 131 S.Ct. 1388, 1398 (2011).

7

**B.**     **Standard of Review**

In 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act ("AEDPA"), which amended 28 U.S.C. § 2254 and "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." Bell v. Cone, 535 U.S. 685, 693 (2002). It requires federal courts collaterally reviewing state proceedings to afford considerable deference to state courts' legal and factual determinations. AEDPA reflects the view that habeas corpus is a "'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." Harrington v. Richter, 562 U.S. 86, 102-03 (2011) (quoting Jackson v. Virginia, 443 U.S. 307, 332, n.5 (1979) (Stevens, J., concurring in judgment)). AEDPA imposes "a difficult to meet and highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt." Pinholster, 131 S.Ct. at 1398 (internal quotation marks and citations omitted).

The Supreme Court has strictly limited the circumstances under which a guilty plea may be attacked on collateral review, noting: "It is well settled that a voluntary and intelligent plea of guilt made by an accused person, who has been advised by competent counsel, may not be collaterally attacked." Bousley v. United States, 523 U.S. 614, 621 (1998) (quoting Mabry v. Johnson, 467 U.S. 504, 508 (1984)). "Indeed, 'the concern with finality served by the limitation on collateral attack has special force with respect to convictions based on guilty pleas.'" Id. (quoting United States v. Timmreck, 441 U.S. 780, 784 (1979)). "Where, as here, a defendant is represented by counsel during the plea process and enters his plea upon the advice of counsel, the voluntariness of the plea depends on whether counsel's advice 'was within the range of competence demanded of attorneys in criminal cases.'" Hill v. Lockhart, 474 U.S. 52, 56 (1985) (quoting McMann v. Richardson, 397 U.S. 759, 771 (1970)). See also Tollett v. Henderson, 411 U.S. 258, 267-68 (1973). In an attempt to get around the limitation his guilty plea has

8

on his availability to receive relief on collateral review, Petitioner contends that Woodin was ineffective, and that, as a result, his plea was not knowingly and intelligently entered in violation of his due process rights.

Because the Superior Court denied Petitioner's claims on the merits, this Court's review of them is very limited. It is not for this Court to decide whether the Superior Court's decision was right or wrong. Rather, under AEDPA's standard of review, as codified in relevant part at 28 U.S.C. § 2254(d)(1), it is Petitioner's burden to show that the Superior Court's adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States[.]

28 U.S.C. § 2254(d)(1).

**C.**     **Discussion**

The "clearly established Federal law," 28 U.S.C. § 2254(d)(1), in which to analyze Petitioner's ineffective assistance claims is governed by Strickland. Since the Superior Court applied the Strickland analysis when it evaluated Petitioner's claims, there can be no question that its adjudication withstands review under the "contrary to" clause of § 2254(d)(1). Williams v. Taylor, 529 U.S. 362, 406 (2000) ("a run-of-the mill state-court decision applying the correct legal rule from [Supreme Court] cases [does] not fit comfortably within § 2254(d)(1)'s 'contrary to' clause.")

The only question that remains for this Court is whether the state court's adjudication of either of Petitioner's claims was an "unreasonable application of" Strickland. See Richter, 562 U.S. at 102 ("It bears repeating that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable. If this standard is difficult to meet, that is because it was meant to be. As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal court relitigation of claims already

9

rejected in state proceedings.") "[U]nder AEDPA, the question 'is not whether a federal court believes the state court's determination 'was incorrect, but whether that determination was unreasonable – a substantially higher threshold.'" Rountree v. Balicki, 640 F.3d 530, 540 (3d Cir. 2011) (quoting Knowles v. Mirzayance, 556 U.S. 111, 123 (2009), which quoted Schriro v. Landrigan, 550 U.S. 465, 473 (2007)).

> The Supreme Court instructed that § 2254(d)(1)'s "unreasonable application" clause:
>
> preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents. It goes no farther…. *As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement*.

Richter, 562 U.S. at 102-03 (emphasis added). See also White v. Woodall, — U.S. — , 134 S.Ct. 1697, 1706-07 (2014) ("The critical point is that relief is available under § 2254(d)(1)'s unreasonable-application clause if, and only if, it is so obvious that a clearly established rule applies to a given set of facts that there could be no 'fairminded disagreement' on the question, Harrington [v. Richter], 562 U.S., at — , 131 S. Ct., at 787."). It also held:

> Establishing that a state court's application of Strickland was unreasonable under § 2254(d) is all the more difficult. The standards created by Strickland and § 2254(d) are both "highly deferential," [Strickland, 466 U.S.] at 689; Lindh v. Murphy, 521 U.S. 320, 333, n.7 (1997), and when the two apply in tandem, review is "doubly" so, [Knowles v. Mirzayance, 556 U.S. 111, 123 (2009)]. The Strickland standard is a general one, so the range of reasonable applications is substantial. [Id.] Federal habeas courts must guard against the danger of equating unreasonableness under Strickland with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard.

Id. at 788 (parallel citations omitted).

Importantly, this Court must defer to the specific findings of fact made by the PCRA court, including its credibility determinations regarding Woodin's and Petitioner's hearing testimony.[4] This Court thus is bound by the PCRA court's determination that Petitioner failed to provide Woodin with his complete criminal history. Under the circumstances, the Superior Court's decision that it was objectively reasonable for Woodin to have relied upon the information that Petitioner gave to him in calculating his potential prior record score was not "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Richter, 562 U.S. at 103. Therefore, this claim withstands review under § 2254(d)(1)'s "unreasonable application" clause.

As for Petitioner's claim that Woodin was ineffective for advising him to take what Petitioner now deems to be the less favorable plea agreement, this Court is mindful that "counsel should be 'strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment[.]'" Burt v. Titlow, — U.S. —, 134 S.Ct. 10, 17 (2013) (quoting Strickland, 466 U.S. at 690). The strategic decisions that Woodin made in advising Petitioner about the plea deals available to him are precisely the type of strategic decisions that the Supreme Court in Strickland held to be protected from second-guessing. 466 U.S. at 690-01. Keeping in mind that "the Sixth Amendment does not guarantee the right to perfect counsel; it promises only the right to effective assistance," Titlow, 134 S.Ct. at 17 (quoting Strickland, 466 U.S. at 690, 687), this Court cannot conclude that the Superior Court's decision to deny Petitioner relief on this claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any

---

4  AEDPA requires that "a determination of a factual issue made by a State court *shall be presumed to be correct*" and the petitioner has the "burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. §2254(e)(1) (emphasis added). Petitioner has not rebutted that presumption.

11

possibility for fairminded disagreement." Richter, 562 U.S. at 103. Therefore, this claim withstands review under § 2254(d)(1)'s "unreasonable application" clause as well.

**D.** **Certificate of Appealability**

Section 102 of AEDPA, which is codified at 28 U.S.C. § 2253, governs the issuance of a certificate of appealability for appellate review of a district court's disposition of a habeas petition. It provides that "[a] certificate of appealability may issue...only if the applicant has made a substantial showing of the denial of a constitutional right." When the district court has rejected a constitutional claim on its merits, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Slack v. McDaniel, 529 U.S. 473, 484 (2000). Applying that standard here, jurists of reason would not find it debatable whether each of Petitioner's claims should be denied. Accordingly, a certificate of appealability is denied.

## II.

For the reasons set forth above, the petition for a writ of habeas corpus is denied and a certificate of appealability is denied on all claims.

An appropriate Order follows.

Dated: August 17, 2015
/s/ Susan Paradise Baxter
SUSAN PARADISE BAXTER
United States Magistrate Judge

cc: Notice by ECF to counsel of record and by U.S. mail to Petitioner at his address of record